UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE LACY, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>CITY OF SAN FRANCISCO, et al.,<br><br>　　　　Defendants. | Case No. 19-cv-02662-JSC<br><br>**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 42 |

Denise Lacy and her granddaughter D.G. bring this civil rights action against the City and County of San Francisco and San Francisco Police Sergeants Maguire and Hutchings following an August 3, 2017 incident in which Plaintiffs were allegedly subject to an unlawful search and seizure. Defendants' motion for summary judgment is now pending before the Court.[1] (Dkt. No. 42.) Having considered the parties' briefs and having had the benefit of oral argument on September 24, 2020, the Court GRANTS IN PART and DENIES IN PART the motion for summary judgment. Plaintiffs have not offered evidence sufficient to show a constitutional violation except with respect to Sergeant Maguire's seizure of D.G.'s phone.

**SUMMARY JUDGMENT EVIDENCE**

On August 3, 2017, Denise Lacy drove her grandson Lamonte Mims to his court appearance at the San Francisco Hall of Justice. (Dkt. No. 45-2, Lacy Depo. at 32:4-8.[2]) Ms. Lacy was accompanied by her granddaughter D.G. who was eight years old. (*Id*. at 32:9-4; Dkt. No. 45-3, D.G. Depo. at 10:15.) When they arrived at the Hall of Justice, Mr. Mims was arrested

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 4 & 16.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

by Sergeant Maguire and escorted to the homicide office. (Lacy Depo. at 35:15-25; Dkt. No. 45-1, Maguire Depo. at 9:18-22.)   When Ms. Lacy asked Sergeant Maguire why her grandson was being arrested, he would not say. (Maguire Depo. at 9:21-22; Lacy Depo. at 42:19-23.) Instead, Sergeant Maguire asked her if she knew where Mr. Mims' phone was because he did not have it when he was arrested. (Maguire Depo. at 9:25-10:3.) Ms. Lacy responded that she did not know about a phone. (*Id*. at 10:4-7.) Sergeant Maguire then asked Ms. Lacy what vehicle she brought Mr. Mims to court in and when she said a black Lexus, he asked to see the vehicle. (Lacy Depo. at 9:24-10:2.) Ms. Lacy agreed to show him the vehicle. (*Id*. at 43:18-22.)

Ms. Lacy, D.G., Sergeant Maguire, and at least two other San Francisco police officers followed Ms. Lacy to her car.[3] When they arrived at the car, Sergeant Maguire asked Ms. Lacy to open the car. (Lacy Depo. at 51:7-9.) Ms. Lacy asked "why? Why do I have to open it? I mean, I thought you had to have a warrant for this kind of stuff." (*Id*. at 51:11-13.) Sergeant Maguire responded that they were looking for a phone and they thought it might be in the car "and that if we were able to obtain a search warrant for the car, we would have to hold the car, put it on hold, and then wait for a search warrant." (Maguire Depo. at 14:8-12.) He warned her that it could be a "lengthy process" and "the only other way I could do it is with her consent." (*Id.* at 14:12-15.) Ms. Lacy then opened the car. (Lacy Depo. at 52:3.) The officers spent a couple of minutes looking through the interior and the trunk—they did not take anything. (*Id*. at 52:8-18.)

After completing the vehicle search, either Sergeant Sullivan or Sergeant Batchelder asked D.G. what her phone number was. (Dkt. No. 45-3, D.G. Depo at 28:23-29:2.) D.G. testified that the officer yelled at her over and over to give her phone number, that she was scared, and that the officer "snatched my phone from me." (*Id*. at 29:2-5.) According to D.G., after the officer called the phone number she gave him and her phone rang, the officer returned her phone to her. (*Id.* at 33:16-20.) Sergeant Sullivan attests that no one yelled at D.G. and that the officers never touched or physically possessed her phone; instead, they asked her for her phone number and verified that

---

[3] Sergeant Maguire testified that he was accompanied by Sergeant Sullivan and Sergeant Batchelder. (Maguire Depo. at 10:25-11:10.) Plaintiffs' opposition brief argues that six officers followed Plaintiffs to Ms. Lacy's vehicle, but the record citation does not indicate the number of officers. (Dkt. No. 50 at 2 (citing Lacy Depo 45:15-22, 46:8-14).)

it was not the number of the phone they were looking for and that the phone in her hand matched the number she gave (by calling it). (Dkt. No. 46, Sullivan Decl. at ¶ 6.)

Shortly thereafter, Sergeant Maguire radioed something about a "ping" and then he said to Ms. Lacy: "We know it's in your purse. Where's the phone?" (*Id*. at 52:23-53:16.) Ms. Lacy said "They in my purse, and nobody's going in there." (*Id*. at 53:17.) According to Ms. Lacy after she said that they could not look in her purse, Sergeant Maguire said "Well, you going to go to jail. I'm going to put your car impound for 30 days, and you're going to be arrested." (*Id*. at 54:25-55:6.) Ms. Lacy then reached in her purse and handed Sergeant Maguire the phone. (*Id*. at 55:9.) Sergeant Maguire's version of these events differs in that he testified that after he told Ms. Lacy the phone number for the phone they were looking for, she reached in her purse and handed him the phone. (Maguire Depo. at 18:4-11.) He does not recall threatening Ms. Lacy with arrest or the impound of her vehicle. (*Id*. at 18:19-24.)

\*\*\*

Although the Court has pointed out differences in the parties' version of events, for purposes of this motion the Court draws all reasonable factual inferences from the evidence in Plaintiffs' favor. Thus, where the facts alleged by Plaintiffs and supported by evidence differ from those of Defendants, the Court relies on Plaintiffs' version of facts because the question before the Court is whether, drawing all reasonable inferences in the non-moving parties' favor, the moving party would nonetheless be entitled to judgment in its favor. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).

**DISCUSSION**

Defendants moved for summary judgment on all of Plaintiffs' claims. In their opposition brief, Plaintiffs dismissed their *Monell* claims and their unlawful detention claims. (Dkt. No. 50 at 6.) The following five Section 1983 claims remain: (1) unlawful search of Ms. Lacy's vehicle, (2) unlawful search of Ms. Lacy's purse; (3) unlawful search of Mr. Mims' phone,[4] (4) unlawful

---

[4] The Court refers to the phone that was found in Ms. Lacy's purse as Mr. Mims' because there is no dispute that while Ms. Lacy owned the phone, Mr. Mims was the person using the phone. (Dkt. No. 45-2, Lacy Depo. at 30:9-15 ("the phone that he was using the months before the incident"); 70:10-13 ("I knew what phone they wanted. I knew they wanted Lamonte

3

seizure of Mr. Mims' phone, and (5) unlawful seizure of D.G.'s phone.  Defendants insist that they are entitled to judgment in their favor on each of these claims, or alternatively, that the officers are entitled to qualified immunity.

### A. Unlawful Search Claims

Plaintiffs insist that Defendants conducted an unlawful search of Ms. Lacy's car, Mr. Mims' phone, and D.G.'s phone.  Plaintiffs, however, have pointed to no evidence that Defendants searched either Ms. Lacy's purse or Mr. Mims' phone.  First, with respect to Ms. Lacy's purse, there is no evidence that anyone searched her purse.  To the contrary, Ms. Lacy herself testified that she "wouldn't let him reach into [her purse]," and that instead, she reached in and handed the phone to Sergeant Maguire.  (Lacey Depo. at 55:9-10, 67:22-25.)  Second, as to Mr. Mims' phone, while Plaintiffs argue in their opposition that "Defendants searched through the contents of her cell phone without [Ms. Lacy's] consent," they do not cite to any evidence to support this statement.  *See Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996) (noting that it is not the court's task "to scour the record in search of a genuine issue of triable fact.").  In her deposition, Ms. Lacy testified that Sergeant Maguire "opened the phone up and went in there, and he told Detective Hutchinson, 'I got the phone.'"  (Lacy Depo. at 70-1-3.)    While officers generally require a warrant before searching digital data on a cell phone, *see Riley v. California*, 573 U.S. 373, 386 (2014), Ms. Lacy's vague testimony is not sufficient to raise a trialable issue of fact as to whether the officers searched the digital content of the phone.

The Court thus turns to Plaintiffs' claim that Defendants searched Ms. Lacy's vehicle without her consent.

### 1) Consent to Perform Vehicle Search

Warrantless searches "are per se unreasonable under the Fourth Amendment —subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (internal footnote omitted).  As relevant here, one of the exceptions is consent: "it is no doubt reasonable for the police to conduct a search once they have been

---

phone").

4

permitted to do so." *Florida v. Jimeno*, 500 U.S. 248, 250–51 (1991). "Whether consent to search was voluntarily given or not is to be determined from the totality of all the circumstances." *United States v. Chan-Jimenez*, 125 F.3d 1324, 1327 (9th Cir. 1997) (internal citation and quotation marks omitted). Courts consider five factors to determine whether consent was freely and voluntarily given: "(1) whether the defendant was in custody; (2) whether the arresting officer had his guns drawn; (3) whether *Miranda* warnings were given; (4) whether the defendant was notified that he had a right not to consent; and (5) whether the defendant had been told that a search warrant could be obtained." *United States v. Vongxay*, 594 F.3d 1111, 1119-20 (9th Cir. 2010) (internal citation omitted). "All five factors need not be satisfied in order to sustain a consensual search." (*Id.*)

Plaintiffs contend that Ms. Lacy did not consent to the search of her vehicle because (1) she was not advised of her right to refuse to consent, (2) she was not given a *Miranda* warning, and (3) she felt intimidated when she questioned the legality of the officers' search. None of these factors raise a dispute of material fact as to whether Ms. Lacy consented to the search.

First, officers are not required to "inform citizens of their right to refuse when seeking permission to conduct a warrantless consent search." *United States v. Drayton*, 536 U.S. 194, 206 (2002). Instead, "the totality of the circumstances must control, without giving extra weight to the absence of this type of warning." *Id*. at 207 (holding that while the officer did not inform passengers of their right to refuse the search, because he requested permission to conduct the search, the totality of the circumstances indicated that their consent was voluntary).

Second, because Ms. Lacy was "was not under arrest at the time consent was given [] *Miranda* warnings were not necessary." *United States v. Torres-Sanchez*, 83 F.3d 1123, 1130 (9th Cir. 1996), as amended (July 15, 1996) (holding that consent to search was voluntary even though no *Miranda* warning were given, the plaintiff was not advised of his right to refuse consent, and the officer never explained that a search warrant could be obtained).

Third, Plaintiffs' duress argument fares no better. While Ms. Lacy testified that Sergeant Maguire "demanded" she open the vehicle, she also testified that he did not yell or raise his voice and that she voluntarily opened the vehicle door and consented to the search. (Lacy Depo. at

5

43:25 ("he did not yell"); 45:6 ("he was not yelling"); 45:18-19 ("a demand"). Sergeant Maguire testified that he told Ms. Lacy that he could get a warrant to search the vehicle, but after he said that it would be a lengthy process, she unlocked the door and consented to the search. (Maguire Depo. at 14:16-24.) *See United States v. Chan-Jimenez,* 125 F.3d 1324, 1327 (9th Cir. 1997) (finding that an officer's request to search with his hand resting on his gun was "implicitly coercive" and distinguishing cases where the officers merely had a weapon but made no implicit or explicit reference to it). Here, according to Ms. Lacy, Sergeant Maguire said "'Open the door.' So I opened the door." (Lacy Depo. at 49:8.) Under the totality of the circumstances here, where Sergeant Maguire did not raise his voice, made no reference or gesture to his weapon, Ms. Lacy was not under arrest, and was told that the officers could get a search warrant, the evidence is insufficient to support a finding of coercion. *See United States v. Kash*, No. 2:13-CR-00330-KJM-3, 2015 WL 7188219, at *6 (E.D. Cal. Nov. 16, 2015), aff'd, 751 F. App'x 1007 (9th Cir. 2018) (finding that plaintiff voluntarily consented to a vehicle search where in response to the officer's request to search the defendant's vehicle the defendant responded, "if you need to," the conversation was cordial, the officer did not draw his gun, and the plaintiff "did not protest or object to the search at any point.").

The Court finds that given the totality of circumstances after drawing all reasonable inferences in Ms. Lacy's favor, Ms. Lacy's consent to the vehicle search was voluntary as a matter of law. Defendants are therefore entitled to summary judgment on Plaintiffs' unlawful search claims.

**B. Unlawful Seizure claims**

**1) Mr. Mims' Phone Seizure**

Plaintiffs insist that the seizure of Mr. Mims' phone was unreasonable because Ms. Lacy did not consent to producing the phone and instead produced it under threat of her arrest and the impounding of her vehicle. While Defendants dispute Ms. Lacy's version of the events and contend that she did consent to providing Mr. Mims' phone, for purposes of this motion they accept her version of facts as true and maintain that consent was not required because the exigent circumstances exception applies.

6

"The exigent circumstances exception allows warrantless searches and seizures when an emergency leaves police insufficient time to seek a warrant. Under this exception, for example, the police need not wait to get a warrant if there is an urgent need to provide aid or if there is concern evidence might be destroyed in the time it would take to get a warrant." *Recchia v. City of Los Angeles Dep't of Animal Servs.*, 889 F.3d 553, 559 (9th Cir. 2018) (internal citation omitted). To evaluate whether the exception applies, courts consider the totality of the circumstances. *Id*. Generally, courts "balance the privacy-related and law enforcement-related concerns" through the following four factors:

> (1) whether the police had probable cause to believe that the defendant's residence contained evidence of a crime or contraband; (2) whether the police had good reason to fear that, unless restrained, the defendant would destroy the evidence or contraband before the police could return with a warrant; (3) whether the police made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy; and (4) whether the police imposed the restraint for a limited period of time—in other words, whether the time period was no longer than reasonably necessary for the police, acting with diligence, to obtain the warrant.

*United States v. Song Ja Cha*, 597 F.3d 995, 1000 (9th Cir. 2010) (quoting *Illinois v. McArthur*, 531 U.S. 326, 331-32 (2001)).

First, the Court considers whether the police had probable cause. The undisputed facts are that the police had arrested Mr. Mims on homicide charges, they believed that Mr. Mims had possession of a phone that had been called 671 times over the two-month period spanning the homicide by the other prime suspect in the homicide, and they had obtained a geolocation ping warrant for the phone which was pinging in their vicinity. (Dkt. No. 44, Hutchings Decl. at ¶¶ 3, 5; Dkt. No. 45-1, Maguire Depo. at 24:21-25:12.) According to Ms. Lacy, Sergeant Maguire either "pinged" or called Mr. Mims' phone and one of the two phones in her purse started vibrating, and Mr. Mims used one of those two phones.[5] (Dkt. No. 45-2 at 30:9-15, 52:3-53:9, 53:15-16, 54:4-21, 71:16-25.) These facts are sufficient to establish that the police had probable cause to seize the phone. *See United States v. Cervantes*, 703 F.3d 1135, 1139 (9th Cir. 2012) ("An officer will have

---

[5] Sergeant Maguire testified that after he told Ms. Lacy the phone number of the phone he was looking for, she reached in her purse and handed him the phone. (Maguire Depo. at 18:4-16.)

7

1    probable cause to search if "there is a fair probability that contraband or evidence of a crime will
2    be found in a particular place, 'based on the totality of circumstances.'") (internal citation
3    omitted).

4          Second, the Court considers whether the police had good cause to fear that the evidence
5    might be destroyed before they returned with a warrant. *See Riley v. California*, 573 U.S. 373,
6    388 (2014) (holding that law enforcement officers may seize a cell phone "to prevent destruction
7    of evidence while seeking a warrant"). Because the at-issue phone was owned by and in the
8    possession of someone other than Mr. Mims, the officers had good cause to believe that the
9    contents could be compromised before they returned with a warrant. *See United States v.*
10   *Stefanson*, 648 F.2d 1231, 1236 (9th Cir. 1981) (finding that the officers had good cause to believe
11   that the defendant's wife and a co-defendant might destroy evidence when they learned he had
12   been arrested on firearms and drug charges); *see also Segura v. United States*, 468 U.S. 796, 808
13   (1984) ("the discovery and protection of incriminating evidence from removal or destruction can
14   supersede, at least for a limited period, a person's possessory interest in property, provided that
15   there is probable cause to believe that that property is associated with criminal activity.").

16         Third, Defendants made reasonable efforts to reconcile their need to preserve the evidence
17   with the demands of personal privacy. Sergeants Sullivan, Batchelder, and Hutchings all attest
18   that they did not search the phone prior to obtaining the search warrant. (Dkt. No. 43 at ¶ 6; Dkt.
19   No. 44 at ¶ 10; Dkt. No. 46 at ¶ 7.) And as explained above, the evidence in the record is
20   insufficient to support a finding that Sergeant Maguire searched the contents of Mr. Mims' phone
21   before obtaining the warrant.

22         Fourth, the Court looks at the duration of the seizure. "An unreasonable delay between the
23   seizure of a package and obtaining a search warrant may violate the defendant's Fourth
24   Amendment rights. The touchstone is reasonableness." *United States v. Sullivan*, 797 F.3d 623,
25   633 (9th Cir. 2015). Here, Defendants obtained a warrant a week after its seizure. (Dkt. No. 44-1
26   at 23.) Defendants do not offer any argument or evidence as to why it took a week to obtain the
27   warrant, but having reviewed Sergeant Hutchings' statement of probable cause attached the
28   warrant, it appears that the officers were attempting to obtain the phone of the other individual

1    involved in the homicide and did so the day after Mr. Mims was arrested. (*Id.* at 35-36.) Sergeant
2    Maguire then sought a warrant for both phones together. There is no bright line rule regarding
3    what constitutes an unreasonable delay in obtaining a warrant. *See United States v. Gabelman*,
4    2020 WL 2739616, at *5 (D. Nev. May 5, 2020), report and recommendation adopted, 2020 WL
5    2735382 (D. Nev. May 26, 2020) (collecting cases); *see also United States v. Burgard*, 675 F.3d
6    1029, 1030 (7th Cir. 2012) (holding that a six-day delay between seizure of cell phone and time
7    police secured a warrant to search was not unreasonable). The critical question is whether the
8    delay in obtaining the warrant meaningfully interfered with Ms. Lacy's possessory interest. *See*
9    *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 63 (1992). Given that Ms. Lacy testified that Mr. Mims and
10   not herself was the user of the phone, and Mr. Mims was in custody for the whole time between
11   the phone's seizure and the warrant being obtained, the seven-day delay in obtaining a warrant did
12   not meaningfully interfere with Ms. Lacy's possessory interest in the phone. *See United States v.*
13   *McNeely*, No. 17-CR-00204-JD-1, 2019 WL 2423522, at *3 (N.D. Cal. June 10, 2019) (finding
14   that 41-day delay in obtaining a warrant for the cell phone "did not meaningfully intrude on [the
15   defendant's] possessory interests" because he "was in custody for the whole time that passed
16   between the seizure and the first warrant, and could not have used the cell phone during the 41-day
17   period"); *see also Segura v. United States*, 468 U.S. 796, 813 (1984) (finding a "virtually
18   nonexistent" possessory interest in apartment and its contents when defendants were under arrest
19   and in custody).
20         Considering the totality of the circumstances after drawing all reasonable inferences in Ms.
21   Lacy's favor, Defendants have met their burden of demonstrating that the exigent circumstances
22   exception applies as a matter of law to justify the warrantless seizure of Mr. Mims' phone. The
23   motion for summary judgment as to the seizure of Mr. Mims' phone is granted.
24         **2) D.G.'s Phone Seizure**
25         Plaintiffs also contend that Defendants' seizure of D.G.'s phone was unreasonable because
26   she did not consent to the seizure and she did not feel free to leave while Sergeant Maguire had
27   her phone. Defendants dispute that any officer had physical possession of the phone at any time,
28   but argue for purposes of the motion that even if Defendants seized the phone, such seizure was

justified by the exigent circumstances exception for the same reason as for Mr. Mims' phone. The problem with Defendants' argument is that unlike with Mr. Mims' phone, they have not identified evidence that supports a finding that it was reasonable for them to believe that the phone in D.G.'s hand was Mr. Mims' phone. The phone in Ms. Lacy's purse started vibrating after the officers called or "pinged" Mr. Mims' phone number. (Dkt. No. 45-2 at 53:15-16, 54:4-21.) In contrast, with respect to D.G.'s phone, the officers yelled at her to provide her phone number, which made her scared so she could not remember the number; when she finally told the officers her phone number, they called it, and the phone in her hand started ringing at which point the officer snatched it from her. (Dkt. No. 45-2, Lacy Depo. at 63:14-64:3; Dkt. No. 45-3, D.G. Depo. at 28:25-29:5, 33:16-20.) The officers had no reasonable basis to seize the phone from D.G. *after* she had told them her phone number, they dialed the number she gave them, and the phone in her hand started to ring. At that point, the officers did not have probable cause to believe that the phone in D.G.'s hand was Mr. Mims' phone; instead, the only reasonable inference was that the phone had a number different from Mr. Mims' phone and thus was not the phone they were seeking.

At oral argument, Defendants argued that it was enough that they knew based on the geolocation warrant that the phone was pinging every 15 minutes in Plaintiffs' vicinity. Not so. The officers must have probable cause to believe that the item seized contained evidence of a crime—once they discovered that the phone was not Mr. Mims' phone, and instead, was the phone of an eight-year old girl, they had no reason to seize the phone. *See Kentucky v. King*, 563 U.S. 452, 460 (2011) (noting that the exigent circumstances doctrine allows for a warrantless seizure "to prevent the imminent destruction of *evidence*") (emphasis added); *Texas v. Brown*, 460 U.S. 730, 749–50 (1983) ("[I]f there is probable cause to believe [a container] contains contraband ... [t]he item may be seized temporarily" while officers seek a warrant to search it).

Accordingly, accepting Plaintiffs' version of events, Defendants have failed to show that the exigent circumstances exception justified Sergeant Maguire's warrantless seizure of D.G.'s phone. However, because there is no evidence that Sergeant Hutchings was involved in the seizure, summary judgement is granted on this claim as to him.

10

**C. Qualified Immunity**

Defendants argue that even if the seizure of D.G.'s phone violated the constitution, they are nonetheless entitled to qualified immunity. "In determining whether an officer is entitled to qualified immunity, we consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014). "The plaintiff bears the burden to show that the contours of the right were clearly established." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011). "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), overruled on other grounds by *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Defendants generally argue that no clearly established law put them on notice that the warrantless seizure of D.G.'s phone would violate the constitution. (Dkt. No. 42 at 31: 10-11.) But the law clearly put them on notice that they required probable cause to believe that D.G.'s cell phone was Mr. Mims' phone. *See United States v. Cervantes*, 703 F.3d 1135, 1139 (9th Cir. 2012) ("An officer will have probable cause to search if "there is a fair probability that contraband or evidence of a crime will be found in a particular place, 'based on the totality of circumstances.'") (internal citation omitted); *Horton v. California*, 496 U.S. 128, 136 (1990)( "the extension of the original justification [for the search] is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges."). Given that D.G.'s phone had a different phone number than Mr. Mims' phone—the phone that geolocation information put in Plaintiffs' vicinity—there was no probable cause for concluding that it was the phone Defendants were seeking. Defendants do not cite any cases that suggest that something less than probable cause is required to seize a phone from a non-criminal suspect, even for a brief period. Accordingly, on this record, and on the facts as alleged by Plaintiffs, qualified immunity is not warranted.

**CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment is GRANTED as

to the unlawful search claims and the unlawful seizure of Mr. Mims' phone claim. It is also GRANTED as to Sergeant Hutchings on the unlawful seizure of D.G.'s phone claim. The Court DENIES summary judgment on Sergeant Maguire's alleged seizure of D.G.'s phone.

Defendants' administrative motion to file the warrants related to the criminal investigation under seal is GRANTED. (Dkt. No. 55.)

The pretrial and trial dates are VACATED.

The Court will hold a further case management conference with parties at 1:30 p.m. on November 12, 2020. An updated statement is due one week in advance. The parties should be prepared to discuss whether they would be amenable to a virtual jury trial given that trial in this case should last about one to two days at most and given that it is uncertain when an in-person trial would commence.

**IT IS SO ORDERED.**

Dated: October 5, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge